FILED

Nov 3   3 16 FM '03

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEVEN SZEKERES, ET AL. | : | **Lead Docket Number** |
| | : | 3:01CV2099 (MRK) |
| VS. | : | |
| | : | |
| DENISE C. SCHAEFFER, ET AL. | : | |
| | | |
| STEVEN SZEKERES, ET AL. | : | Member Case |
| | : | 3:01CV2108(MRK) |
| VS. | : | |
| | : | |
| PETER HOWARD, ET AL. | : | NOVEMBER 3, 2003 |

## PLAINTIFFS' SUPPLEMENTARY SUBMISSION REGARDING MOTIONS FOR SUMMARY JUDGMENT IN LEAD CASE

The plaintiffs herewith submit, in supplementary opposition to the pending motions for summary judgment, the following:

A.  The search warrant, application and affidavit of Detective Bernard M. Halapin and Lt. Michael R. Flynn, dated November 18, 1999, setting forth *inter alia*, the false claims of defendant Schaeffer.

B.  Psychiatric report of Jay Berkowitz, M.D., dated November 1, 2000, confirming that, contrary to the accusation of defendant Schaeffer,  the plaintiff Steven Szekeres does not suffer from any mental illness.

C.  Transcript of proceedings in the Superior Court at West Hartford on November 30, 1999, confirming the official role of defendant Schaeffer.

THE PLAINTIFFS

BY:

JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
TELEPHONE: 203.562.9931
FAX: 203.776.9494
E-MAIL: jrw@johnrwilliams.com
Attorney for Plaintiffs

## CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to William J. Melley, III, Esq.,
250 Hudson Street, Hartford, CT 06106; John F. McKenna, Esq., 68 South Main
Street, West Hartford, CT 06107; Michael C. Conroy, Esq., Gordon, Muir and Foley,
LLP, Ten Columbus Boulevard, Hartford, CT 06106-1976; Zbigniew S. Rozbicki,
Esq., P. O. Box 419, Torrington, CT 06790; and Michael C. Deakin, Esq., Law
Offices of Peter D. Clark, 525 Bridgeport Avenue, Shelton, CT 06484.

JOHN R. WILLIAMS



**AFFIDAVIT AND APPLICATION
SEARCH AND SEIZURE WARRANT**
JD-CR-64 Rev. 6-03
C.G.S. § 54-33a, 54-33c, 54-33j

**INSTRUCTIONS TO APPLICANT**
File a copy of the application for the warrant and all affidavits upon which the warrant is based, in a sealed envelope, with the clerk of the court for the geographical area within which the search will be conducted no later than the next business day following the issuance of the warrant. Indicate the police department case number and date of issuance on the front of the sealed envelope.

**STATE OF CONNECTICUT
SUPERIOR COURT**
Form JD-CR-52 must also be completed

Monroe PD
99-27618



Page 1 Of 6

**INSTRUCTIONS TO G.A. CLERK**
1. Prior to the execution and return of the warrant, do not disclose any information pertaining to the application for the warrant or any affidavits upon which the warrant is based.

2. Upon execution and return of the warrant, affidavits which are the subject of an order dispensing with the requirement of giving a copy to the owner, occupant or person within forty-eight hours shall remain in the custody of the clerk's office in a secure location apart from the remainder of the court file.

**TO: A Judge of the Superior Court:**

The undersigned, being duly sworn, complains on oath that the undersigned has probable cause to believe that certain property, to wit:
firearms, in particular an unknown band .357 magnum handgun and ammunition        372-6717

☐ is possessed, controlled, designed or intended for use of which is or has been or may be used as the means of committing the criminal offense of:

☐ was stolen or embezzled from:

☒ constitutes evidence of the following offense or that a particular person participated in the commission of the offense of:
in violation of a condition of Bond not to possess any weapons until further notice from Court.

☐ is in the possession, custody or control of a journalist or news organization, to wit:

☒ and such person or organization has committed or is committing the following offense which is related to such property:
Public Act 99-278   212  BH

☒ and such property constitutes contraband or an instrumentality of the criminal offense of:
Public Act 99-218   212  BH

And is within or upon a certain person, place, or thing, to wit:
PERSON

PLACE OR THING
the residence located at 39 Hillside Lane, Monroe, Connecticut, a natural colored raised ranch.

'And that the facts establishing the grounds for issuing a Search and Seizure Warrant are the following:

The undersigned, Det. Bernard M. Halapin, being duly sworn, does depose and state that he is a member of the Monroe Police Department since February 13, 1973. At all times mentioned herein I was acting as a member of said department. The following facts and circumstances are stated from personal knowledge and observations as well as information received from other police officers acting in their official capacity and from official police reports and statements made by prudent and credible witnesses.

The undersigned, Lt. Michael R. Flick , being duly sworn, does depose and state that he is a member of the Monroe Police Department since January 09, 1986. At all times mentioned herein I was acting as a member of said department. The following facts and circumstances are stated from personal knowledge and observations as well as information received from other police officers acting in their official capacity and from official police reports and statements made by prudent and credible witnesses.

That on November 18, 1999 the Monroe Police Department was contacted by telephone by Denise C. Schaeffer, a Victims Advocate for the West Hartford Court. Ms. Schaeffer reported that a Stephen Szekeres, DOB 06/14/64 of 39 Hillside Lane, Monroe Connecticut was arrested in West Hartford on an arrest warrant charging him with Assault of a Victim 60 years or older in the Third Degree, Threatening and Breach of Peace. This arrest stemmed from an incident involving Szekeres' sister and mother.

Ms. Schaeffer further reported that this arrest occurred on November 12, 1999 and a condition of his release was that he does not possess any weapon until further notice from the Court. Ms. Schaeffer also reported that while in court on November 15, 1999, Szekeres turned over to the Court a receipt indicating he had turned over to the Monroe Police Department a pellet pistol and three BB / Pellet rifles. Ms. Schaeffer stated that Szekeres was Paranoid Schizophrenic and that his mother and sister both state that he owns a .357 magnum handgun and threatened them with it in the past.

The undersigned ("X" one) [ X ] has not presented this application in any other court or to any other judge.

[ ] has presented this application in another court or to another judge (specify)

The undersigned has not presented this application in any other court or to any other judge.

This application consists of this form plus _____ pages attached hereto and made a part hereof.

Wherefore the undersigned requests that a warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing, search the same, and take into custody all such property.

STATE OF CONNECTICUT

| CITY/TOWN | DATE | SIGNATURE AND TITLE OF AFFIANT |
|---|---|---|
| Bridgeport | 11-18-99 | Det. Bernard M. Halapin *Det. Bernard M. Halapin* |
| BRIDGEPORT | 11-18-99 | Det. Bernard M. Halapin *Lt. Michael R. Flick* |
| JURAT | Subscribed and sworn to before me on: DATE 11-18-99 | SIGNED (Judge of the Superior Court) *Michael R. Flick* |

Ms. Schaeffer went on to say that she was attempting to protect Szekeres' family and feels action should be taken to locate this weapon that he did not turn over to police.

Ms. Schaeffer faxed a copy of appearance bond form issued to Szekeres on November 12, 1999 along with the Information page (JD-CR-71) of the arrest warrant application. On the bottom of this form is hand written " Cond of bond; 1) stay out of W.Htfd 2) Stay away from 23 Ferridge Rd. (W. Htfd)."

A check of the Monroe Police Department Records Division weapons files was conducted and no record of registration for any weapon was located for Stephen Szekeres.

The affiant, Detective Halapin contacted Stephen Szekeres to obtain permission to search his residence for this weapon. Szekeres stated that he has never owned a .357 magnum handgun nor is there in his house. Szekeres would not give permission for the search of his residence and stated "do what you have to do".

The affiant, Detective Halapin contacted Joyce Szekeres, Stephen's mother by telephone. Mrs. Szekeres stated that last seen the .357 magnum handgun about three years ago. She further reported that it was over three years ago that he had put the gun to his head while it was unloaded. She said that he had done the past when he wanted attention and has not done this in about three years. Mrs. Szekeres could not describe this .357 magnum handgun and also said she does not fear Stephen.

Based upon the facts reported by Victim's Advocate Denise C. Schaeffer, the affiant's are respectfully requesting authorization to search the residence located at 39 Hillside Lane, Monroe, Connecticut, to locate and seize any and all firearms.

The undersigned has not presented this application in any other court or to any other judge.

This application consists of this form plus _____ pages attached hereto and made a part hereof.

Wherefore the undersigned requests that a warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing, search the same, and take into custody all such property.

STATE OF CONNECTICUT

| CITY/TOWN | | DATE | SIGNATURE AND TITLE OF AFFIANT |
|---|---|---|---|
| *Bridgeport* | | 11-18-99 | Det. Bernard M. Halapin *D. J. Bureau Am Halapin* |
| BRIDGEPORT | | 11-18-9 9 | Det. Bernard M. Halapin *Lt. Michael J. Patrick* |
| JURAT | Subscribed and sworn to before me on: | DATE 11-18-99 | SIGNED (Judge of the Superior Court) *George N. Thim* |

**AFFIDAVIT REQUESTING DISPENSATION**
**WITH REQUIREMENT OF DELIVERY**
pursuant to § 54-33c, Connecticut General Statutes

Page 4 Of 6

Monroe PD
99-27618

TO:  A Judge of the Superior Court

For the reasons set forth below, the undersigned, being duly sworn, requests that the judge dispense with the requirement of C.G.S. § 54-33c that a copy of the affidavit(s) in support of the warrant be given to the owner, occupant or person named therein within forty-eight hours:

☐ The personal safety of a confidential informant would be jeopardized by the giving of a copy of the affidavits at such time;

☐ The search is part of a continuing investigation which would be adversely affected by the giving of a copy of the affidavits at such time;

☐ The giving of such affidavits at such time would require disclosure of information or material prohibited from being disclosed by chapter 959a of the general statutes;

and the specific details with regard to such reasons are as follows:

The undersigned further requests that this affidavit also be included in such nondelivery.

STATE OF CONNECTICUT

| CITY/TOWN | | DATE | SIGNATURE AND TITLE OF AFFIANT |
|---|---|---|---|
| Bridgeport | | 11-18-99 | Det. Bernard M. Halapin   *Det Bernard M Halapin* |
| BRIDGEPORT | | 11-18-99 | Det. Bernard M. Halapin   *LT Michael R. Fick* |
| JURAT | Subscribed and sworn to before me on: | DATE  11-18-99 | SIGNED (Judge of the Superior Court) |



**SEARCH AND SEIZURE WARRANT**

STATE OF CONNECTICUT
SUPERIOR COURT

Monroe PD
99-27618

Page 5 Of 6

The foregoing Affidavit and Application for Search and Seizure Warrant having been presented to and been considered by the undersigned, a Judge of the Superior Court, the undersigned (a) is satisfied therefrom that grounds exist for said application, and (b) finds that said affidavit establishes grounds and probable cause for the undersigned to issue this Search and Seizure Warrant, such probable cause being the following: From said affidavit, the undersigned finds that there is probable cause for the undersigned to believe that the property described in the foregoing affidavit and application is within or upon the person, if any, named or described in the foregoing affidavit and application, or the place or thing, if any, described in the foregoing affidavit and application, under the conditions and circumstances set forth in the foregoing affidavit and application and that, therefore, a Search and Seizure Warrant should issue for said property.

NOW THEREFORE, by Authority of the State of Connecticut, I hereby command any Police Officer or a regularly organized police department, any State Policeman; or any conservation officer, special conservation officer or patrolman acting pursuant to C.G.S. § 26-6 to whom these presents shall come within ten days after the date of this warrant to

☑ enter into or upon and search the place or thing described in the foregoing affidavit and application, to wit:

the residence located at 39 Hillside Lane, Monroe, Connecticut, a natural colored raised ranch.

☐ search the person described in the foregoing affidavit and application, to wit:

for the property described in the foregoing affidavit and application, to wit:

firearms, in particular an unknown band .357 magnum handgun and ammunition

and upon finding said property to seize the same, take and keep it in custody until the further order of the court, and with reasonable promptness make due return of this warrant accompanied by a written inventory of all property seized.

☐ The foregoing requests that the judge dispense with the requirement of C.G.S. § 54-33c that a copy of the affidavit(s) in support of the warrant be given to the owner, occupant or person named therein and that the affidavit in support of such request also be included in such nondelivery is hereby:

☐ GRANTED for a period of    | NOT TO EXCEED 2 WEEKS BEYOND DATE WARRANT IS EXECUTED |

This order, or any extension thereof, dispensing with said requirement shall not limit disclosure of such affidavits to the attorney for a person arrested in connection with or subsequent to the execution of the search warrant unless, upon motion of the prosecuting authority within two weeks of such arraignment the court finds that the state's interest in continuing nondisclosure substantially outweighs the defendant's right to disclosure.

☐ DENIED

Signed at _Bridgeport_    Connecticut, on:    DATE _11 - 18 - 99_    SIGNED (Judge of the Superior Court) _George N. Thim_

**RETURN FOR AND INVENTORY**

Page 6 Of 6

PROPERTY SEIZED ON SEARCH AND SEIZURE WARRANT

| | | | INVENTORY CONTROL NO. |
|---|---|---|---|

| JUDICIAL DISTRICT OF | G.A. | AT (Address of Court) | DATE OF SEIZURE |
|---|---|---|---|
| Fairfield | 2 | 172 Golden Hill Street, Bridgeport | |

| DOCKET NO. | UNIFORM ARREST NO. | POLICE CASE NO. | COMPANION CASE NO. |
|---|---|---|---|
| CR- | | 99-27618 | |

Then and there by virtue and pursuant to the authority of the foregoing warrant, I searched the person, place, or thing named therein, to wit:

**PERSON**

**PLACE or THING**
the residence located at 39 Hillside Lane, Monroe, Connecticut, a natural colored raised ranch.

and found thereon or therein, seized, and now hold in custody, the following property.

☐ Total Cash Seized: _____ consisting of

and I gave a copy of such warrant to _____ the owner or occupant of

the dwelling, structure, motor vehicle or place designated therein, or to _____

the person named therein, on (Date):

| DATE OF THIS RETURN | SIGNED (Officer's Signature and department) | |
|---|---|---|
| | | Monroe PD |

Note: Form JD-CR-61, pages 1-6 must be supplemented by Form JD-CR-52.

DR. JAY BERKOWITZ M.D.
SUPERVISOR OF MENTAL HEALTH
COMMUNITY CORRECTIONAL CENTER OF BRIDGEPORT
P.O. BOX 6490
1106 NORTH AVENUE,  BRIDGEPORT , CT.  06604
( 203-579-6222 )  ( 203-579-6131)

November 1, 2000

Re:  Mr. Steven Szekeres
      69 Goldenrod Avenue
      Bridgeport , Ct. 06606
      D.O.B. 6/16/64

To Whom It May Concern

I evaluated Mr. Szekeres on October 23, 2000. My evaluation consisted of a
history, which included a family history and mental health exam.

I found Mr. Szekeres to be mentally stable. There was no evidence of
psychosis, depression, or any mental illness. There is no evidence of an
alcohol or drug problem.

I feel Mr. Szekeres is mentally sound and there is not evidence for further
psychiatric therapy.

Sincerely ,

Jay Berkowitz M.D.

Curriculum Vitae

# JAY KENNETH BERKOWITZ, M.D.
P.O. Box 1355
Stamford, CT 06904
(914) 537-4669

## EMPLOYMENT:

**1999 – Present**  **FEDERAL COURT APPOINTMENT** – Monitoring Panel for Psychiatrist Conditions at York Correctional Facility

**1999 – Present**  **PRIVATE PRACTICE** – Norwalk, CT

**1991 - Present**  **CHIEF PSYCHIATRIST** - Department of Corrections, Bridgeport Correctional Facility

**1991 - 1999**  **MEDICAL DIRECTOR** - Community Services
Greater Bridgeport Mental Health - Psychiatrist - GA, Forensic, Access Teams

**1996**  **PSYCHIATRIST** - Casa Rehab Center, Bridgeport, CT

**1995**  **PSYCHIATRIST** - Gunster Rehab, Bridgeport, CT

**1987 - 1991**  **MEDICAL DIRECTOR** - F.S. DuBois Center, Community Crisis Intervention Program, Connecticut Department of Mental Health, Catchment Areas 1 and 2, Region 1. Fairfield County, Connecticut
- In charge of all clinical decisions regarding patients in Catchment Areas 1 and 2.
- Supervise staff (multi-disciplinarian).
- Coordinate Psychiatric Patient Care at St. Joseph's Hospital, Stamford Hospital, Greenwich Hospital, Norwalk Hospital.
- Coordinate Crisis Program with group homes and Fairfield Hills Hospital.
- Coordinate teaching to medical students, residents and social workers.
- Represent Crisis Program in middle management program at DuBois Center.
- Educate community regarding psychiatric patients.
- Lecture at various speaking engagements.
- Coordinate in-patient crisis beds as well as respite beds in the program.
- Coordinate involvement with Police Departments.
- Coordinate and implement current diversion policy with Region 1 hospital emergency rooms, ambulance service and crisis staff.
- Coordinate involvement with community agencies.
- In charge of teaching paramedics course in Psychiatry.
- Counsel staff and upper management.
- Member of Clinical Chiefs Board - Department of Mental Health.

**1986 - 1987**  **PSYCHIATRIST** - F.S. Dubois Center, Community Crisis Intervention Program, Catchment Areas 1 and 2, Region 1.
- Evaluate all patients.
- Responsible for Medication Clinic.
- Group and individual treatment.
- Provide assistance, direction and support for crisis staff.
- Assist and establish community relations to enhance crisis team functioning.
- Assist with refinement of crisis team working structure.
- Represent Crisis Program with all related community agencies.

**1987**  **PRIVATE PRACTICE** - Stamford, CT
- Admitting rights to Stamford Hospital
- Privileges at Stamford Hospital, Greenwich Hospital, St.Joseph Hospital; and Norwalk Hospital.
- Tandet Geriatric Center - Psychiatrist
- Smith House - Psychiatrist

**JAY KENNETH BERKOWITZ, M.D. - Page 3**

**EDUCATION:**

| | |
|---|---|
| 1985 - 1987 | **RESIDENCY -** *Psychiatry*, New York Medical College at Stamford Hospital, Lenox Hill Hospital and Westchester County Medical Center. |
| 1985 - 1987 | **HUNTER MOUNT SINAI -** *Geriatric* Certification Program |
| 1984 - 1985 | **RESIDENCY -** *Neurology*, Metropolitan Hospital, New York City |
| 1983 - 1984 | **INTERNSHIP -** New York Medical College, Valhalla, New York |
| 1978 | **FAR EASTERN UNIVERSITY,** Manila, Philippines, **M.D.**<br>• Recipient of President's Award for the organization of Medical Relief Program for earthquake victims.<br>• Recipient of Outstanding Junior-Intern Award<br>• Senior Class President - Activities involved establishment of a welfare health care unit for indigents.<br>• Co-Chairman of Student Council - Responsibilities included course assessment and curriculum revisions.<br>• Organized and facilitated the operation of a medical primary care unit for residents of underdeveloped rural areas. |
| 1971 | **NEW YORK UNIVERSITY,** University Heights, New York, **B.A.**<br>• Elected to Executive Committee for N.Y.U. Varsity Club<br>• Graduated on Dean's List - Honors in History<br>• Bing Miller Award for Outstanding Manager in sports program<br>• Varsity Basketball Manager |
| 1967 | **PELHAM MEMORIAL HIGH SCHOOL   ACADEMIC**<br>• Foreign Exchange Student - Mexico<br>• Varsity Letter in Tennis and Cross Country, Varsity Club<br>• Eagle Scout |

STATE OF CONNECTICUT          :    SUPERIOR COURT

                              :    HARTFORD JD

V.                            :    AT WEST HARTFORD

STEVEN SZEKERES               :    NOVEMBER 30, 1999


B E F O R E:

        HONORABLE JOHN M. BYRNE, JUDGE


A P P E A R A N C E S:

        MARK BRODSKY, ESQ.
        Assistant State's Attorney
        For the State of Connecticut




                        Jean McGowan Opulski
                        Court Monitor

THE COURT: Okay. I'll listen to you now or I'll listen to you later. Whatever you want.

MR. BRODSKY: I'm going to ask that this be referred to Family Relations right now so Family can prepare protective orders.

THE COURT: Yeah, okay, as long as he understands --

MS. SCHAEFFER: Thank you. That's why we're here. That's exactly why we're up here.

THE COURT: Okay.

MS. SCHAEFFER: Great. Thank you.

THE COURT: Do you understand that? Can you afford an attorney?

THE DEFENDANT: Yes.

THE COURT: Well, no, we're going to do the protective orders first. Go see Family and then come back.

MR. BRODSKY: You're going to have some protective orders and then you come back. Okay? Just do what Family tells you to do and you won't have a problem with the judge. All right? Please take that to Family.

(WHEREUPON THE MATTER WAS PASSED.)

MR. BRODSKY: Also, recalling Steven Szekeres. Apparently, he is out of the courtroom. May that pass?

(WHEREUPON THE MATTER WAS PASSED.)

MR. BRODSKY: Steven Szekeres on the criminal

docket, has a criminal file and we're requesting --
Family Relations is requesting protective orders for
Stephanie Dridi and Joyce Szekeres.

THE COURT: Do you understand this, sir?

THE DEFENDANT: I wasn't even shown it, your
Honor.

THE COURT: Huh?

THE DEFENDANT: I wasn't shown anything, your
Honor. Actually, I just sat out in front of Family
Services.

THE COURT: Thank you.  Okay. Didn't I say -- he
seems to not know what anybody's trying to do, Mr.
Brodsky.

MR. BRODSKY: Well, I'm going to ask that the
Court issue protective orders.

THE COURT: No, I'm not. If he doesn't
understand, he can go upstairs and see the Public
Defender. That's all.

THE DEFENDANT: I can afford an attorney. Can I
have time to get myself an attorney?

MR. BRODSKY:  I object to a continuance.

THE COURT: No, you go talk with Family right
now.  Can I have your name, please?

MS. MILLER:  Nancy Miller.

THE COURT: How are you related to him?

MS. MILLER:  I'm his future mother-in-law.

THE COURT: Future?

MS. MILLER:  Future mother-in-law.

THE COURT: Your name, sir?

MR. MILLER: Bob Miller, sir.

THE COURT: Same thing?

MR. MILLER: Yes.

THE COURT: No, go talk with Family. Right now, go into Family and you talk with them; you understand that protective order or I'll hold a hearing.

MR. MILLER: But they just sent us out here, sir.

THE DEFENDANT: They just -- we just were in there, your Honor.

MR. BRODSKY: The Family Relations Officer will read this to you. Okay?

THE COURT: Yeah, and I'll hold a hearing as to whether or not this order should be --

MR. BRODSKY: That's all he's going to do.

THE COURT: -- issued. Okay? So, go and talk with them right now but this is not a court of play, not with me. Go in and talk with them right now and see what they're going to talk to me about.

MR. BRODSKY: Please see Family. Just --

THE DEFENDANT: Your Honor, we're trying to cooperate.

MR. BRODSKY: Good.

THE DEFENDANT: We're just getting sent in circles.

THE COURT: Just go talk with them right now.

MR. BRODSKY: He's just going to read this to you and ask you to sign it to acknowledge that you read it.

(WHEREUPON THE MATTER WAS PASSED.)

MR. BRODSKY: Steven Szekeres on the criminal docket. The defendant, according to what the Family Relations Officer told me, does not want to sign the protective orders, which I think is silly. So, we have a witness here who can testify that the defendant committed an assault in the third degree in a family violence context.

THE COURT: Okay.

MR. BRODSKY: Szekeres. Do we have our witness here? All right. Perhaps she can just indicate to the Court under oath what she observed the defendant do on September 19, 1999 to herself and her mother.

THE COURT: How do you spell the last name?

MR. BRODSKY: S-Z-E-K-E-R-E-S. I don't see why there have to be five people up here.

THE COURT: Well, let me do it this way.

MR. BRODSKY: All right.

THE COURT: Let me do it my way, Mr.Brodsky.

MR. BRODSKY: Sure.

THE COURT: Why don't you give a presentation first.

MR. BRODSKY: Sure, I'd ask that the clerk place the --

THE COURT: No, no, you -- just tell me what

your claim is.

MR. BRODSKY:  The claim is that the defendant was arrested on a warrant signed by the Court based on the fact that on September 19, 1999, he went to the residence of his sister -- you're his sister?

MS. DRIDI:   Yes.

MR. BRODSKY:  -- 23 Fernridge in West Hartford. His sister's name is Stephanie Dridi.
The defendant's mother was also present.  He had been warned to stay away from that premises -- from those premises -- on October 3, 1999. There were further problems. On September 19, 1999, the defendant's mother, an elderly woman, presently in Florida, Joyce Szekeres, was claiming that she was assaulted by the accused, her son.  She returned to Florida. She then decided to report the assault. The defendant also made threats to her. Also threatened to blow his own brains out. He pushed his mother back violently according to a sworn statement that she gave West Hartford police officers and I understand the defendant's sister was present during this and she can back up the arrest warrant affidavit.

THE COURT:  Okay. What's the matter on for today?  Protective order --

MR. BRODSKY: The State's asking that the Court issue two no-contact orders; one --

THE COURT:  Okay.

MR. BRODSKY: — pertaining to the defendant's sister; the other pertaining to his mother.

THE COURT: Okay. Let's then now go -- can I have your name, please, ma'am?

MS. SCHAEFFER: Denise Schaeffer, Victim Advocate.

THE COURT: Yes. What would you like to say?

MS. SCHAEFFER: What would I like to say, sir?

THE COURT: Mm-hmm.

MS. SCHAEFFER: Your Honor, the protective orders need to be issued today and there is a question of the possession of a .357 Magnum gun still that has not been turned in at the last continuance date. There was -- the protective order apparently was not issued because there was air rifles turned in or pellet rifles or some other guns that were turned in but not the gun that was in question. That is on record. It is on record with the West Hartford Police Department with the statements of three different people: Stephanie, Joyce and I believe that Denise Miller -- according to Officer Schiffer — on a statement that -- he and I had a conversation on 11/18 -- that there is a possession of a .357 Magnum that's still in question.

THE COURT: Okay. Can I have your name, ma'am, please?

MS. DRIDI: Stephanie Dridi.

THE COURT: Let me ask you a question. Who lives at 23 Fernridge Drive?

MS. DRIDI: I do.

THE COURT: Who else lives there?

MS. DRIDI: My husband.

THE COURT: And what -- and this gentleman is your --

MS. DRIDI: Brother.

THE COURT: Okay. And you don't want him there?

MS. DRIDI: No, I don't.

THE COURT: Okay. That solves a problem. Okay. Who wants to be heard here?

MR. BRODSKY: Apparently, no one has any comment.

THE DEFENDANT: I have a comment, your Honor.

THE COURT: What would you like to say?

THE DEFENDANT: I would like to be represented by an attorney. I --

THE COURT: You can have your -- yeah, sure, but let me ask you one question, sir. They don't want you at this address.

THE DEFENDANT: No, I have no problem with -- I have no problem with coming to West Hartford.

THE COURT: Okay.

THE DEFENDANT: My concern is that they will come down to -- I'm being harassed by these people and they're going to come down -- if there's a protective order issued, they're going to come down

to where I live. I live --

THE COURT: Where do you live?

THE DEFENDANT: I live in Monroe. I currently rent a home from my mother and they would have me arrested again falsely.

And I'd like to speak to the issue of the alleged weapon. There is no --

THE COURT: No, no, first of all, about -- there's no reason for you to be at 23 Fernridge Drive, is there?

THE DEFENDANT: That's correct. And I have no problem --

THE COURT: Is there any reason for you to be in West Hartford at all while this case is pending?

THE DEFENDANT: Well, besides perhaps trying to find an attorney or maybe doing Christmas shopping in the local mall, I don't see why, no. I don't have a problem with not even coming to this town.

THE COURT: Okay. Let's just go to that issue. Now, again, can I have your name, ma'am?

MS. MILLER: I'm Nancy Miller.

THE COURT: And how are you related to him?

MS. MILLER: I'm his future mother-in-law.

THE COURT: Okay. What would you like to say?

MS. MILLER: That there is no weapons. He turned in some air rifles and there was no assault and we were summoned to her address.

THE COURT: Who summoned you?

MS. MILLER:  Mr. and Mrs. Dridi called us to get tools that her husband had borrowed and when he showed up at the address with my daughter, then the police were there.

THE DEFENDANT:  Your Honor, they --

THE COURT:  I -- I'll let you add-- I want to go down the line. Okay?

THE DEFENDANT:  Sorry. Sorry.

THE COURT: Can I have your name, sir, please?

MR. MILLER:  Robert Miller, your Honor.

THE COURT: What would you like to say?

MR. MILLER:  Just the same thing, your Honor. The only reason Steve was at 23 Fernridge -- ridge, is it? -- whatever --

THE COURT: Fernridge Drive.

MR. MILLER:  -- Fernridge Drive in the first place was that we were called by Stephanie to go there. Me and my wife were called to -- we have to come get Steve's tools. And I said, they're not my tools; we're not going. So, I told Steve and Steve went to get his tools. That's the only reason he was there in the first place, your Honor.

THE COURT: Okay.

MR. MILLER: And as for the weapon, the day after Steve was released from jail, he turned in two weapons to Monroe Police Department and he gave a receipt of those weapons to the court here and a week later, the police came and searched his house

and found nothing, your Honor.

THE COURT: Well, somebody's made a representation of a .357 Magnum.

THE DEFENDANT: Your Honor, can I speak to that?

THE COURT: No, I'll go back to you.

THE DEFENDANT: I'm sorry.

THE COURT: I'm talking to this gentleman.

MR. MILLER: I don't know of any weapon, sir.

THE COURT: Okay. I'll listen to you.

THE DEFENDANT: The weapons that I turned in to Monroe Police Department --

THE COURT: No, I'm more worried about -- somebody's made a representation of a .357 Magnum.

THE DEFENDANT: There's an air pistol that looks very intimidating. It is not a firearm. It is an air pistol. That's what's being confused as a weapon. That was turned in to the Monroe Police. That is on my receipt.

THE COURT: Okay.

THE DEFENDANT: I'd also like to add, your Honor, if I may --

THE COURT: Yes.

THE DEFENDANT: -- that the reason why I went to Fernridge is that they contacted me to go there. I'm being evicted from the home in Monroe and Stephanie and my mother both stated to myself and my fiancee that they were going -- if we did not leave

the home in Monroe quietly -- if we resisted and
fought this eviction process -- that they would ruin
my upcoming wedding to my fiancee and throw us in
jail.

THE COURT:  Do they own the home in Monroe?

THE DEFENDANT:  My mother does.

THE COURT: Okay.  I'm only concerned right now
about West Hartford.  I'll solve these problems very
quickly for everybody 'cause that's what I'm here to
do.

THE DEFENDANT:  I -- I -- can I --

THE COURT: Anybody else like to be heard?

THE DEFENDANT:  I have one more --

THE COURT: Because after this, I become
onerous.  Go ahead.  I'll get back to you.

THE DEFENDANT:  When I came up here and I
presented the receipt for the weapons that I turned
in to the Monroe Police, my home was then -- I was
continually bothered by someone from West Hartford
or representing my sister and my mother as far as --
they contacted the Monroe Police. I was served with
a search warrant.  It stated in that search warrant
that they -- that they're saying that my mother does
not fear me but someone up here -- and I believe it
was a Victim's Advocate but I'm not sure; I'd have
to check with the search warrant -- said that I am a
paranoid schizophrenic which I have never been
diagnosed of such things and I actually resent being

H16W-CR99-0100853-S

STATE OF CONNECTICUT

V.

STEVEN SZEKERES


# C E R T I F I C A T I O N


I hereby certify that the foregoing is a true and correct transcript of the proceedings in the above-captioned matter, heard before the Honorable John M. Byrne, Judge of the Superior Court of the Hartford Judicial District on the 30th day of November, 1999, at West Hartford, Connecticut.

Dated this 8th day of March, 2000, at West Hartford, Connecticut.


*Jean McGowan Opulski*

Jean McGowan Opulski
Court Monitor