## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEVEN SZEKERES and<br>DENISE MILLER | : | |
| | : | |
| Plaintiffs | : | |
| | : | **LEAD DOCKET NO.** |
| v. | : | CIVIL NO. 3:01 cv 2099 (MRK) |
| | : | |
| DENISE C. SCHAEFFER,<br>JOYCE SZEKERES and<br>STEPHANIE ANN DRIDI | : | |
| | : | |
| Defendants | : | |
| | : | |
| STEVEN SZEKERES<br>DENISE MILLER | : | |
| | : | |
| Plaintiffs | : | |
| | : | **MEMBER CASE** |
| v. | : | CIVIL NO. 3:01 cv 2108 (MRK) |
| | : | |
| PETER HOWARD, et al | : | |
| | : | |
| Defendants | : | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiffs Steven Szekeres and Denise Miller, wife of Mr. Szekeres, filed this action

("*Howard*") on April 12, 2002 against the following defendants: Officers Peter Howard and Mark

Caufield of the Monroe Police Department in their individual capacities; Stephanie Ann Dridi,

sister of Steven Szekeres; and Chaker Dridi, husband of Stephanie Ann Dridi.  Plaintiffs claim

that Defendants violated 42 U.S.C. § 1983 by: (1) falsely arresting and maliciously prosecuting

Mr. Szekeres; (2) improperly seizing Plaintiffs' property and thereby violating their property

rights in violation of the Fourth Amendment; and (3) depriving Plaintiffs of their procedural and

substantive due process rights under the Fourteenth Amendment.  Plaintiffs also assert state law claims of trespass, malicious prosecution, and intentional and negligent infliction of emotional distress.  Amended Complaint [doc. # 18] ¶¶ 15-23.

*Howard* was consolidated with *Szekeres v. Schaeffer*, No. 3:01cv2099 (MRK) ("*Schaeffer*") on June 4, 2003 [doc. #49], with *Schaeffer* as the lead case and *Howard* as the member case.  While *Howard* involves facts and some parties distinct from those in *Schaeffer*, there are overlapping parties in these consolidated actions, which involve various aspects of the Szekeres family's unfortunate history of ongoing, bitter disputes.

Following oral argument in both *Schaeffer* and *Howard*[1] and, by request of the Court, all parties filed supplemental briefing.  On January 23, 2004, the Court issued a Memorandum of Decision in *Schaeffer* [doc. #92], granting summary judgment to defendants Denise C. Schaeffer, Joyce Szekeres, and Stephanie Ann Dridi on all federal claims and declining to retain supplemental jurisdiction over pendent state law claims.  Judgment in *Schaeffer* entered on February 5, 2004 [doc. #93].

In *Howard*, Judge Robert N. Chatigny had previously dismissed Plaintiffs' constitutional claims against the Dridi defendants.  *See* Endorsement Ruling [doc. #12].  However, the Court retained supplemental jurisdiction over the state common law claims against the Dridi defendants.  Two pending motions remain outstanding in *Howard*: Stephanie Ann Dridi's and Chaker Dridi's Motion for Reconsideration Filed In Member Case [doc. #58] ("Mot. for

---

[1]The Court was informed at the start of oral argument that, due to unexpected events, counsel for Officers Howard and Caufield was unable to appear for argument.  The Court declined to suspend the proceedings, and deemed counsel's absence a waiver of Officers Howard's and Caufield's opportunity to orally argue their motion for summary judgment. Transcript [doc. #91] at 5.

Reconsideration"); and Officers Howard's and Caufield's Motion for Summary Judgment [doc. #70]. In their Motion for Reconsideration, the Dridi defendants urge the Court to refrain from retaining supplemental jurisdiction over the Plaintiffs' pendent state law claims in the event the Court grants Officers Howard's and Caufield's Motion for Summary Judgment. Mot. for Reconsideration at 2.

In their Motion for Summary Judgment, Officers Howard and Caufield move for judgment as a matter of law regarding Plaintiffs' claims for false arrest and malicious prosecution on the ground that, given the undisputed facts, no reasonable jury could conclude that Mr. Szekeres was falsely arrested or maliciously prosecuted and/or that the officers are entitled to qualified immunity as a matter of law on those claims. At oral argument, Plaintiffs conceded that, at this stage, they are no longer pursuing their Fourteenth Amendment procedural and substantive due process claims. Transcript [doc. #91] at 77-78. Therefore, the Court considers Plaintiffs' procedural and substantive due process claims to have been abandoned. Plaintiffs further conceded that their Fourth Amendment seizure claims were essentially state common law theft claims that applied only to the Dridi defendants. *Id*. Therefore, as to defendants Howard and Caufield, the claims currently before this Court on Plaintiffs' motion for summary judgment are federal claims for false arrest and malicious prosecution pursuant to § 1983, and state law claims for malicious prosecution, trespass, and intentional and negligent infliction of emotional distress.

For the reasons set forth below, the defendants' Motion for Summary Judgment [doc. #70] in *Howard*, No. 3:01cv2108 (MRK) is GRANTED as to all of Plaintiffs' § 1983 claims. In addition, the Dridis' Motion for Reconsideration [doc. #58] is GRANTED, and the Court

3

declines to exercise supplemental jurisdiction over Plaintiffs' pendent state law claims.

Therefore, the Court dismisses without prejudice to renewal in state court all state law claims

against all Defendants in *Howard*.

## I.

Unless otherwise noted, the following facts are derived from Plaintiffs' Amended

Complaint [doc. #18] ("Amended Compl."), affidavits, and the parties' statements and attached

exhibits submitted pursuant to Local Rule 56.[2]  The facts are recited in the light most favorable to

the Plaintiffs, and those facts which are either undisputed or were conceded at oral argument are

noted.  Only those facts pertinent to determining the Motion for Summary Judgment are recited.

On February 1, 2000, at approximately 6:00 p.m., Officer Howard was dispatched to 39

Hillside Lane upon a complaint by Stephanie Dridi that her brother, Steven Szekeres, had been

evicted from the premises on January 31, 2000 and that she wished to document damage to the

property for the purposes of filing charges against Mr. Szekeres for the alleged property damage.

---

[2]The relevant documents include: Defendants' Local Rule 9(c)(1) Statement of Facts [doc. #71] ("Def.'s Statement of Facts"); Affidavit of Peter Howard [doc. #72], Ex. A ("Howard Affidavit"); Affidavit of Sergeant Mark Caufield [doc. #72], Ex. B ("Caufield Affidavit"); Plaintiffs' 9(c)2 Statement of Material Facts [doc. #74] (Pl.'s Statement of Material Facts"); Steven Szekeres Statement to Police, *id.*, Ex. 2 ("Szekeres Statement to Police"); Denise Miller Statement to Police, *id.*, Ex. 3 ("D. Miller Statement to Police"); Nancy Miller Statement to Police, *id.*, Ex. 4 ("N. Miller Statement to Police"); Deposition of Steven Szekeres, *id.*, Ex. 5 ("Szekeres Depo."); Supplement to Defendant's Motion for Summary Judgment [doc. #82]; Case/Incident Report, *id.*, Ex. G ("Case Report"); Chaker Dridi's Statement to Police, *id.* ("Mr. Dridi's Statement to Police"); Stephanie Ann Dridi's Statement to Police, *id.*, ("Mrs. Dridi's Statement to Police"); Addendum to Supplemental Exhibits to Defendants' Motions to Dismiss [doc. #83]; and Supplemental Exhibits to Defendants' Motions to Dismiss [doc. #89] ("Supp. Exhibits to Def.'s Mot. to Dismiss").

Howard Affidavit ¶ 4; *see also* Case Report at 1.[3]  During the relevant period, the residence at 39

Hillside Lane was owned by Joyce Szekeres, the mother of Mr. Szekeres and Mrs. Dridi.

Szekeres Depo. at 15.  Upon arriving at 39 Hillside Lane, Officer Howard began to inspect the

damage alleged by Ms. Dridi.  *Id.* ¶ 5.  Approximately ten minutes later, Plaintiffs arrived at the

premises with a U-Haul truck.  When Mr. Szekeres and his wife, Ms. Miller, attempted to enter

the house, they discovered that the locks on the front door had been changed.  Pl.'s Statement of

Material Facts, Exhibit 2, at 1 ("Szekeres Statement to Police").[4]  Plaintiffs knocked on the door,

and the Dridis and Officer Howard opened the door.  *Id.*  According to Mr. Szekeres, the Dridis

immediately began yelling obscenities at Plaintiffs, and Ms. Dridi threatened to have Ms.

Szekeres' cats put to sleep.  *Id.*  Plaintiffs informed Officer Howard that under a court-approved

Stipulated Agreement, Plaintiffs were legally entitled to occupy 39 Hillside Lane until midnight

on February 1, 2000, and not, as the Dridis had represented until January 31, 2000.  Szekeres

Statement to Police at 1.

It was later revealed that on November 22, 1999, the Connecticut Superior Court at

Bridgeport had approved a Stipulated Agreement of the Parties ("Stipulated Agreement"), which

involved plaintiffs Steven Szekeres and Denise Miller, and Joyce Szekeres, the mother of Steven

Szekeres.  The Stipulated Agreement effectively granted Mr. Szekeres and Denise Miller

"reasonable use and occupancy" through February 1, 2000.  *See* Pl.'s Statement of Material Facts

[doc. #74], Ex. 1. While the Stipulated Agreement provided by Plaintiffs does not on its face

---

[3]The Case Report [doc. #82], Ex. G, was prepared by Officer Howard on February 1,
2000 at 8:52 p.m.

[4]Mr. Szekeres provided the written Statement on February 2, 2000 at 4:30 P.M., the day
following the events at 39 Hillside Lane, including the arrest of Mr. Szekeres.

explicitly provide an address indicating the property at issue or the precise time of day on February 1, 2000 through which the right of occupancy would continue, the Court will, for the purposes of this motion, assume that the property covered by the Stipulated Agreement is 39 Hillside Lane, Monroe, Connecticut, and that the right of use and occupancy continued through midnight on February 1, 2000.

Shortly after Plaintiffs' arrival at 39 Hillside Lane on February 1, 2000, Officer Howard called Officer Caufield and asked him to report to 39 Hillside Lane in connection with a dispute between two groups of people regarding rightful occupancy of the premises. Caufield Affidavit ¶ 4. After Officer Caulfield arrived at 39 Hillside Lane, Officer Howard informed him that, while Mr. Szekeres and the Dridis each insisted on their independent right to occupy the premises, neither party possessed relevant paperwork to establish legal possession. Howard Affidavit ¶ 5; Szekeres Statement to Police at 1. At oral argument, Plaintiffs' counsel conceded that Plaintiffs were unable to produce the Stipulated Agreement when the officers requested a copy. Transcript at 69. In the face of uncertainty regarding rightful possession and occupancy, the officers granted Mr. Szekeres permission to collect his possessions, which were located in an attached garage, but they also specifically admonished Mr. Szekeres not to enter the house. Howard Affidavit ¶ 9,10; Caufield Affidavit ¶ 7. At oral argument, Plaintiffs' counsel conceded that the officers ordered Plaintiffs not to enter the house. Transcript at 69.

Mr. Szekeres then backed up the U-Haul to the garage and began loading his belongings into the truck. Howard Affidavit ¶ 11; Caufield Affidavit ¶. It is undisputed that, at some point, Mr. Szekeres obtained a ladder and climbed into a storage area above the garage. Howard Affidavit ¶ 12; Caufield Affidavit ¶ 9; Szekeres Statement to Police at 2. At this time, the Dridis

6

were, by order of the officers, in the upstairs bedroom of the house.  Howard Affidavit ¶ 14;

Caufield Affidavit ¶ 12; Mr. and Mrs. Dridi's Statements to Police.  Soon thereafter, the Dridis

yelled for Officers Howard and Caufield to come upstairs, and the Dridis told the officers that

Mr. Szekeres had entered the bedroom of the house through the storage area above the garage.

Howard Affidavit ¶ 15; Caufield Affidavit ¶ 13; Mr. and Mrs. Dridi's Statements to Police.  At

this point, the officers heard Mr. Szekeres yelling "he hit me, he hit me," referring to Mr. Dridi.

Howard Affidavit ¶ 16; Caufield Affidavit ¶ 14; Mr. and Mrs. Dridi's Statements to Police.

Officer Howard ran to the bedroom where the Dridis were located and, from the bedroom,

Officer Howard witnessed Mr. Szekeres climbing down the ladder to the garage.  Howard

Affidavit ¶17.

When Officer Howard returned to the garage to speak with Mr. Szekeres, Mr. Szekeres

informed the officers that he only entered the storage area above the garage, and that while he

attempted to turn on the light in the storage area in order to retrieve some items, he was grabbed

from behind and punched in the jaw by Mr. Dridi.  Szekeres Statement at 2.  However, neither

officer was able to detect any redness or swelling on Mr. Szekeres' full-bearded face.  Howard

Affidavit ¶ 18; Caufield Affidavit 16; Szekeres Statement to Police at 2.

At this point, the officers placed Mr. Szekeres under arrest for disorderly conduct, and

transported him to police headquarters.  Howard Affidavit ¶ 19; Caufield Affidavit ¶ 17; Case

Report at 1.[5]  At police headquarters Mr. Szekeres complained about soreness on his face

---

[5]It is undisputed that Mr. Szekeres was momentarily asked to exit the police vehicle and
that, in the process of exiting the vehicle, Mr. Szekeres fell and struck his knee on the pavement.
Case Report at 1-2; Szekeres Statement at 1.  However, Plaintiffs stated at oral argument that
they do not assert any claims against any of the Defendants in the nature of excessive force or
any other independent legal theory.  Transcript at 79.

prompting police to contact Emergency Medical Services ("EMS").  Case Report at 2.  Upon

examination of Mr. Szekeres, EMS identified a laceration in his mouth.  Szekeres Statement to

Police at 3.  The following day, February 2, 2000, Mr. Szekeres, Ms. Miller, and Mrs. Nancy T.

Miller, the mother of Ms. Miller, submitted written Statements to Officers Howard and Caufield

regarding the events at 39 Hillside Lane on February 1, 2000.  Pl.'s Statement of Material Facts ¶

10.  Plaintiffs also supplied the officers with the Stipulated Agreement regarding Plaintiffs' legal

occupancy of 39 Hillside Lane.  *Id.*  While the record fails to indicate the precise date, it is

uncontested that criminal proceedings were subsequently instituted against Mr. Szekeres for

disorderly conduct arising from the events on the evening of February 1, 2000, and that at trial,

Mr. Szekeres was found not guilty.  Amended Compl. ¶ 14.

Plaintiffs thereafter filed a Complaint, dated February 23, 2000, with the Superior Court,

Housing Session, at Bridgeport against Joyce Szekeres, and Stephanie and Chaker Dridi,

pursuant to Conn. Gen. Stat. §47a-43, for alleged conversion of Plaintiffs' property as well as for

an alleged violation of CUTPA, Conn. Gen. Stat. § 42-110a, and against Chaker Dridi for alleged

physical assault of Steven Szekeres, in connection with the February 1, 2000 incident at 39

Hillside Lane.  Supp. Exhibits to Def.'s Mot. to Dismiss, Ex. A.  Plaintiffs later withdrew the

assault count against Chaker Dridi.  *Id.*, Ex. B, and filed an Amended Complaint with the

Superior Court, Housing Session, at Bridgeport, Docket No. 1006022, dated April 12, 2000,

against the same defendants, for conversion and violation of CUTPA.  *Id.*, Ex. C.  Plaintiffs filed

this action in federal court on November 9, 2001.

## II.

Summary judgment is appropriate only when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. *Andersen v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P 56(e). The Court must draw all ambiguities and inferences in favor of the plaintiffs. *See Andersen*, 477 U.S. at 255. However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Andersen,* 477 U.S. at 249-50.

## A.

To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff is required to show that "the defendant intentionally confined him without his consent and without justification." *Escalera v. Lunn*, 2004 WL 534476, *4 (2d Cir. Jan. 12, 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause to arrest constitutes justification, and, therefore, when an arresting officer has probable cause to arrest the plaintiff, there can be no cause of action for false arrest. *Id.* "Probable cause to arrest exists when the arresting officer has

9

'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Id.* (quoting *Weyant*, 101 F.3d at 852); *see also, e.g., Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). Whether probable cause existed is a question that may be resolved on a motion for summary judgment if there is no dispute of material fact regarding the pertinent events and knowledge of the officers. *See Weyant*, 101 F.3d at 852; *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118-19 (2d Cir. 1995). If there is no genuine issue of material fact, then a claim for false arrest will be defeated, as it is "well established that the existence of probable cause is an absolute defense to a false arrest claim and affords the arresting officer qualified immunity from litigation." *Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir. 2002).

Even if probable cause to arrest is ultimately found not to have existed, an arresting officer would still be entitled to qualified immunity from suit for damages if he can establish that there was "arguable probable cause" to arrest. *Escalera*, 2004 WL 534476, at *4. "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *see also Caldarola*, 298 F.3d at 162 ("In situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity."). As the Second Circuit has explained, "[T]he analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; "arguable probable cause" will suffice to confer qualified immunity for the arrest."

*Escalera*, 2004 WL 534476, at *4.

     **1.    Probable Cause.**    Officers Howard and Caulfield arrested Mr. Szekeres at the 39

Hillside Lane home on February 1, 2000 for disorderly conduct.  Conn. Gen. Stat § 53a-182,

entitled "Disorderly Conduct: Class C misdemeanor," states, in pertinent part:

> (a) A person is guilty of disorderly conduct when, with intent to cause inconvenience,
> annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in
> fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or
> disorderly conduct, annoys or interferes with another person.
> (b) Disorderly conduct is a class C misdemeanor.

The Connecticut Supreme Court has interpreted subdivision (1) of § 53a-182(a) as prohibiting

"physical fighting, and physically violent, threatening or tumultuous behavior."  *State v.*

*Indrisano*, 228 Conn. 795, 812 (1994).  On the basis of those facts in the record on which there is

no dispute, the Court concludes that the officers had probable cause to arrest Mr. Szekeres for

disorderly conduct on the ground that he had either intentionally or recklessly caused

inconvenience, annoyance or alarm, by engaging in threatening or tumultuous behavior.

     It is undisputed that neither the Plaintiffs nor the Dridi defendants were able to support

their assertions of legal entitlement to 39 Hillside Lane with any documentary evidence while on

the premises on February 1, 2000.  Plaintiffs' arrival with a U-Haul and their assertions that they

had the superior claim to occupancy based on a Stipulated Agreement merely raised uncertainty

about who was legally entitled to occupancy of the home.  Officers Howard and Caufield were

thus faced with a precarious and contentious situation in which opposing family members

vehemently demanded their rights to the home, while proving incapable of providing the officers

with any concrete evidence of legal title or license.  In an effort to resolve the immediate dispute

in a practical manner, the officers allowed Mr. Szekeres to remove his possession from the

garage, but told him not to enter the home and instructed the Dridis to stay in the home.

However, immediately thereafter, it is undisputed that there was a disturbance in the home, and the Dridis reported to the officers that, contrary to their orders, Mr. Szekeres had entered the home.  Officer Howard then observed Mr. Szekeres climbing down the ladder from the garage storage area, and Mr. Szekeres himself reported to the officers that he had been punched by Mr. Dridi.  Since so far as the officers were aware, Mr. Dridi was in upstairs bedroom at the time of the disturbance, it was reasonable for the officers to have concluded that Mr. Szekeres had in fact entered the home in violation of the officers' direction that he not do so. Accordingly, the officers arrested Mr. Szekeres for disorderly conduct for contravening their direct order not to enter the home and causing a disturbance by doing so.  On the basis of the information the officers had at that time, no reasonable juror could conclude that the officers lacked probable cause to arrest Mr. Szekeres for disorderly conduct for violating the officers' direct order.  *Caldarola*, 298 F.3d at 163 ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth") (quoting *Miloslavsky v. AES Eng'g Soc'y*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992)); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity.") (citations omitted).

In arguing to the contrary, Plaintiffs place great weight on the fact that under the terms of the Stipulated Agreement, Mr. Szekeres had the right to enter the home on February 1, 2000. However, it is undisputed that neither Mr. Szekeres or anyone else at 39 Hillside Lane had a copy

12

of the Stipulated Agreement, and therefore when the arrest was made, all the officers knew was

that the parties asserted contrary claims to possession of the premises, that Mr. Szekeres had

violated the officers' direct order not to enter the house and that a disturbance had ensued.  The

fact that the officers later learned that the Stipulation Agreement actually existed and that

Plaintiffs were legally entitled to occupy 39 Hillside Lane on February 1, 2000, is irrelevant to

whether the officers had probable cause at the time of the arrest.  For the probable cause inquiry

focuses on the information available to the officers at the time of and prior to the arrest, and not

additional information acquired at some time following the arrest.  *See Jocks v. Tavernier,* 316

F.3d 128, 135 (2d Cir. 2003) ("Probable cause to arrest should be determined based on what the

officer knew at the time of the arrest.") (citing *Ricciuti v. N.Y.C. Transit. Auth.,* 124 F.3d 123 (2d

Cir. 1997).  Furthermore, the officers had no duty to obtain the Stipulated Agreement before

arresting Mr. Szekeres because the law does "not impose a duty on an arresting officer to

investigate exculpatory defenses offered by the person being arrested or to assess the credibility

of unverified claims . . . before making an arrest."  *Jocks*, 316 F.3d at 135 (citing *Ricciuti*, 124

F.3d at 128) ("Once a police officer has a reasonable basis for believing there is probable cause,

he is not required to explore and eliminate every theoretically plausible claim of innocence

before making an arrest.").  A police officer is not required "to investigate independently every

claim of innocence, whether the claim is based on mistaken identity or a defense such as a lack of

requisite intent."  *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979).

There is a further reason why the Stipulated Agreement is irrelevant to Mr. Szekeres'

arrest.  He was not arrested for trespassing.  Instead, he was arrested for violating a direct order

of the police not to enter the home while gathering his possessions from the garage.  Based on the

information available to the officers at the time of the arrest, they reasonably understood that Mr.

Szekeres had entered the home in violation of their order and a disturbance had ensued.  This was

all they needed to establish probable cause to arrest Mr. Szekeres for disorderly conduct.

     Plaintiff also argue that the officers should have arrested Mr. Dridi for assaulting Mr.

Szekeres.  But whether the officers should also have arrested *Mr. Dridi* is irrelevant to the issue

of whether they had probable cause to arrest *Mr. Szekeres.*  Simply put, the officers' decision not

to arrest Mr. Dridi for disorderly conduct did not deprive them of probable cause to arrest Mr.

Szekeres.  *See Singer*, 63 F.3d at 118.  It was, after all, Mr. Szekers who was ordered by the

officers to refrain from entering the house.  And at the time, considering the totality of

circumstances, *see Illinois v. Gates*, 462 U.S. 213, 233 (1983), the officers had information that

would have caused a person of reasonable caution to believe that Mr. Szekeres had, in fact,

contravened the officers' order, causing inconvenience, annoyance, alarm or tumult in violation

of Conn. Gen. Stat. §53a-182(a).  That is sufficient to establish probable cause as a matter of law.

*See U.S. v. McFadden*, 238 F.3d 198, 204 (2d Cir. 2001) ("If the facts and circumstances within

[the officers'] knowledge and of which they had reasonably trustworthy information [are]

sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has

been or is being committed, probable cause to arrest exists.") (citation and quotation marks

omitted**).**

    **2.  Arguable Probable Cause**.     Even if the Court is in error in concluding that there

existed probable cause to arrest Mr. Szekeres for disorderly conduct, Officers Howard and

Caufield certainly had "arguable probable cause" to arrest Mr. Szekeres.  *See Escalera*, 2004 WL

534476 at *4.  "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the

existence of probable cause . . . and in those situations courts will not hold that they have

violated the Constitution." *Saucier v. Katz*, 533 U.S. 194, 206 (2001); *see also Caldarola*, 298

F.3d at 162.  Therefore, "in situations where an officer may have reasonably but mistakenly

concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity."

*Id.*; *see also Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995).  "If police officers of reasonable

competence could disagree as to whether there was probable cause, there is 'arguable probable

cause' sufficient to warrant qualified immunity for the defendant officers." *Boyd v. New York*,

336 F.3d 72, 76 (2d Cir. 2003).

For reasons previously stated, the Court concludes that on the basis of the undisputed

facts in the record, no reasonable juror could conclude that Officers Howard and Caulfield lacked

arguable probable cause.  Even if they were completely mistaken about who had the right to the

property and who had violated the officers' orders and who had hit whom, the fact remains that

under the totality of circumstances, police officers of reasonable competence could disagree as to

whether there was probable cause to arrest Mr. Szekeres and that is all that is required to

establish qualified immunity for the defendant officers.  The Court "will not second-guess this

arrest." *See id.*  The Court thus grants Officers Howard and Caufield summary judgment on

plaintiffs' false arrest claim under § 1983.

## B.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a

plaintiff must show a violation of his rights under the Fourth Amendment, and establish the

elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188,

195 (2d Cir. 2002).  To sustain a malicious prosecution claim under Connecticut law, a plaintiff

must prove the following elements:

> (1) the defendants initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.

*Lo Sacco v. Young*, 20 Conn. App. 6, 19-20 (Conn. App. 1989) *cert. denied*, 213 Conn. 808 (1989) (citing *McHale,* 187 Conn. at 447); *see also Boyd*, 336 F.3d at 76; *Singer,* 63 F.3d at116-17.  Plaintiffs' Amended Complaint contends, and Defendants do not deny, that a proceeding was instituted against Mr. Szekers for disorderly conduct and that it terminated in his favor. Therefore, to prevail on their malicious prosecution claim, Plaintiffs must establish that there was no probable cause to prosecute Mr. Szekeres and that Officers Howard and Caufield acted with malice in connection with those charges.  On the basis of the undisputed facts, it is clear that Plaintiffs cannot establish either requirement.

      **1.    Probable Cause.**    As previously discussed, probable cause existed at the time Officers Howard and Caufield arrested Mr. Szekeres, thus defeating Plaintiffs' claim of false arrest.  However, probable cause to arrest is distinct from probable cause to believe that, in this case, Mr. Szekeres "could be successfully prosecuted.  Only the latter kind of probable cause is at issue with respect to the malicious prosecution claim." *Posr v. Court Officer Shield 207*, 180 F.3d 409, 417 (2d Cir. 1999).  As Judge David G. Trager observed in *Meija v. City of New York*, 119 F. Supp. 2d 232 (E.D.N.Y. 2000), with respect to a claim of malicious prosecution following a warrantless arrest, "the existence . . . of probable cause is measured as of the time the judicial proceeding is commenced, not the time of the preceding warrantless arrest." *Id.* at 254.  While both *Posr* and *Meija* involved malicious prosecution under New York law, there does not appear

to be any relevant distinction in the law of malicious prosecution in New York and Connecticut. *Compare Brome v. City of New York*, 2004 WL 502645, *5 (S.D.N.Y. March 15, 2004)[6] *with Lo Sacco*, 20 Conn. App. at 19-20.  The distinction between probable cause at the time of an arrest and probable cause at the time a criminal action is instituted is especially relevant in this case since Plaintiffs allege that the officers obtained additional information following the arrest of Mr. Szekeres but before institution of court proceedings and that this additional information should have put the officers on notice that there was not probable cause to institute criminal charges against Mr. Szekeres.

At oral argument, Plaintiffs' counsel argued that even if there were probable cause to arrest Mr. Szekeres, probable cause to pursue criminal charges against Mr. Szekeres no longer existed once the officers' acquired a copy of the Stipulated Agreement at police headquarters after Mr. Szekeres had been taken into custody.  According to Plaintiffs' counsel, the Stipulated Agreement demonstrated to police that Plaintiffs were not trespassers.  Transcript at 71-72.  In addition, in their opposition memorandum, Plaintiffs assert that Officers Howard and Caufield filed a false police report because it wrongly stated that Mr. Szekeres had committed the crime of disorderly conduct.  Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 2.  Finally, Plaintiffs' counsel asserted at oral argument that the officers withheld the statements that Plaintiffs gave once they arrived at police headquarters in order to justify the officers' decision not to arrest the Dridis, and that these actions by the officers demonstrated misconduct and malice on their part.  Transcript at

---

[6]To bring a malicious prosecution claim under New York law, a plaintiff must allege (1) institution or continuation of a criminal proceeding by the defendant against the plaintiff; (2) termination of such proceeding in plaintiff's favor; (3) malice in commencing the proceeding; and (4) lack of probable cause for the proceeding.

76.  The Court is not persuaded that any of the foregoing assertions raise a genuine issue of material fact as to whether Officers Howard and Caufield maliciously prosecuted Mr. Szekeres.

First, for the reasons previously stated, the Stipulated Agreement between Joyce Szekeres and Mr. Szekeres does not negate the existence of probable cause to charge Mr. Szekeres with disorderly conduct.  The issue of legal entitlement to 39 Hillside Lane on February 1, 2000 was not the basis for Mr. Szekeres' arrest for disorderly conduct.  Instead, Mr. Szekeres was arrested because he violated a direct order of the police that he refrain from entering the house given the then-uncertain nature of the respective parties' claims to use of the premises.

Second, there is no evidence in the record from which a reasonable juror could conclude that the police officers knowingly supplied false information in the Case Report.  The officers merely recited the events, as they understood them, that led to Mr. Szekeres' arrest, most of which Mr. Szekeres does not contest.  While it is true that he believes he was improperly charged with disorderly conduct and he was, in fact, eventually acquitted on those charges, that does not make the officers' report false.

Third, there is no evidence in the record to suggest that the police officers withheld any information from the case report on this matter.  While Plaintiffs baldly assert that the officers did not share Plaintiffs' station house statements with the State's Attorney, there is absolutely no evidence in the record to support such a claim.  *See Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) (noting that "reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion); *Cary v. Crescenzi,* 923 F.2d 18, 21 (2d Cir. 1991) (nonmovant's "bald assertion, completely unsupported by evidence," did not satisfy burden in opposing motion for summary judgment).

18

Moreover, at oral argument, Plaintiffs' counsel acknowledged that it was the State's Attorney, and not the officers, who was the individual responsible for filing criminal charges in court against Mr. Szekeres after reviewing the case report submitted by the arresting officers. Transcript at 73-74. As the Seventh Circuit noted in *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 901 (7th Cir. 2001)*,* in language that aptly applies to this case as well, "a malicious prosecution action against a police officer is 'anomalous,' because the State's Attorney, not the police, prosecutes a criminal action. Absent a claim that [the officers] played more of an essential or influential role in seeking or procuring the . . . indictment, [plaintiffs'] bare-bones assertions against them are insufficient to state a claim for malicious prosecution." *Id*. (quoting *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring) (citation and quotation marks omitted).

Here, Plaintiffs have not offered anything more than "bare-bones assertions" that Officers Howard and Caufield improperly sought court proceedings against Mr. Szekeres. Consequently, there is no genuine issue of material fact as to whether Officers Howard and Caufield played an essential or influential role in seeking court action against Mr. Szekeres. Therefore, Officers Howard and Caulfield are not liable for malicious prosecution.

    **2.   Malice.** Finally and alternatively, the malicious prosecution claim against Officers Howard and Caulfield must also be rejected because Plaintiffs have submitted absolutely no evidence suggesting, let alone raising a genuine issue of material fact, that Officers Howard and Caufield acted with malice towards Mr. Szekeres. The Second Circuit defines malice as a "wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth*, 82 F.3d at 573; *see also Fulton*, 289 F.3d at 198. Plaintiffs simply have not come

19

forward with any evidence (as opposed to argument) that would permit a trier of fact to conclude that Officer Howard and Caulfield acted with malice in connection with the prosecution of Mr. Szekeres. *See, e.g., Khan v. Costco Wholesale, Inc.*, 2001 WL 1602168 *10 (S.D.N.Y. Dec. 13, 2001) (the existence of probable cause and the absence of malice warranted grant of summary judgment); *see also Jenkins v. City of New York*, 1992 WL 147647 *7 (S.D.N.Y. June 15, 1992) ("Since under no view of [the] facts could probable cause be considered totally lacking, plaintiff still bears the burden of coming forward with some evidence of malice on the defendants' part in order to survive a motion for summary judgment. This they have not done, and the malicious prosecution claims must be dismissed.").

 For the foregoing reasons, the Court grants Officers Howard and Caufield summary judgment on Plaintiffs' § 1983 claim for malicious prosecution.

## III.

The Court turns next to the Dridis' Motion for Reconsideration of Judge Robert N. Chatigny's decision to retain jurisdiction over plaintiffs' state law claims. [doc. #12]. While it is well-established law in this circuit that strict standards apply to motions for reconsideration, the Court does not believe that granting the Dridis' Motion for Reconsideration would amount to a "second bite at the apple" for the Dridis. *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). Nor is the Dridis' motion a "vehicle for relitigating old issues, presenting the case under new theories, [or] securing a rehearing on the merits . . ." *Id.* Rather, the motion is premised on the theory that, in the event the Court decides to grant Officers Howard and Caufield's Motion for Summary Judgment on all federal claims, it would be more appropriate to remit the remaining state law claims to State court. Judge Chatigny's decision to retain

supplemental jurisdiction did not reach the merits of the state law claims and was made at a time when federal claims remained pending against Officers Howard and Caulfield.  Therefore, the Court will GRANT  the Dridis Motion for Reconsideration [doc. #58] and consider whether to continue to exercise supplemental jurisdiction over the state law claims against all defendants.

Plaintiffs' remaining claims against all defendants – for theft, trespass, malicious prosecution, and intentional and negligent infliction of emotional distress –  are exclusively state law claims.  As parties in this case are not completely diverse, plaintiffs have grounded this Court's jurisdiction over those state law claims on the basis of the supplemental jurisdiction statute, 28 U.S.C. § 1367.  The Dridi defendants argue that if this Court grants Officers Howard and Caufield summary judgment on plaintiffs' federal claims, the Court should decline to exercise supplemental jurisdiction over the state law claims and should remit the parties to state court to pursue those claims.  The Dridi defendants point out that plaintiffs currently have pending at least one action, *Szekeres v. Szekeres*, pending in the Superior Court, Housing Session at Bridgeport, Docket No. 1006022, involving both the Szekeres' and the Dridi defendants.  *See* Supp. Exhibits to Def.'s Mot. to Dismiss.

"In exercising its discretion with respect to retaining supplemental jurisdiction, the district court balances several factors 'including considerations of judicial economy, convenience, and fairness to litigants.'"  *Correspondent Serv. Corp. v. First Equities Corp. of Florida*, 338 F.3d 119, 126 (2d Cir. 2003) (quoting *Purgess v. Sharrock, M.D.*, 33 F.3d 134, 138 (2d Cir. 1994).  The Court declined to exercise supplemental jurisdiction over the state law claims in *Schaeffer* and for the same reasons, the Court believes that it should decline to exercise supplemental jurisdiction over the state law claims in *Howard*.  *See Szekeres v. Schaeffer,* No.

21

3:01cv2099 (MRK), 2004 WL 212901, *13 (D. Conn. Jan. 23, 2004).   In the Court's view,  it is

not in the interests of fairness, justice or economy for the Court to continue to exercise

supplemental jurisdiction over Plaintiffs' state law claims.[7]  *See, e.g., K.M.B. Warehouse*

*Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 130-31 (2d Cir. 1995) (upholding district court's

dismissal of state law claims upon granting summary judgment in defendants' favor where, as in

this case, jurisdiction over state law claims were premised solely on supplemental jurisdiction

under § 1367 due to absence of complete diversity between the parties).  Accordingly, the Court

declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses the

remaining claims against all defendants without prejudice to their renewal in state court.

## IV.

Defendants' Howard and Caufield's Motion for Summary Judgment [doc. #70] is hereby

GRANTED.  In addition, defendants Stephanie Ann Dridi and Chaker Dridi's Motion for

Reconsideration Filed in Member Case [doc. #58] is GRANTED, and the Court declines to

exercise supplemental jurisdiction over the remaining Connecticut state law claims on the ground

that the Court has dismissed all federal law claims, and hereby dismisses the state claims as

against all defendants without prejudice to renewal in state court.  The Clerk is ordered to close

the consolidated cases, *Szekeres v. Schaeffer*, No. 3:01cv 2099 (Lead Case) and *Szekeres v.*

*Howard*, No. 3:01cv2108 (Member Case), in their entirety.

---

[7]Section 1367 states that a district court may decline to exercise supplemental jurisdiction
if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §1367(c)(3).

IT IS SO ORDERED.


/s/          Mark R. Kravitz
                  U.S.D.J.

Dated at New Haven, Connecticut: March 26, 2004.